**O**

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE TORRES ANDRADE and ADRIANA DELGADO CAMACHO<br><br>Plaintiffs,<br>v.<br><br>MARCO RUBIO et al,<br><br>Defendants. | Case No.: 5:25-cv-03575-MEMF-DSR<br><br>**ORDER GRANTING MOTION TO DISMISS [DKT. NO. 11]** |

Before the Court is the Motion to Dismiss filed by Defendants Rafael Foley, Todd Lyons, Kristi Noem, Marco Rubio (collectively, "Defendants"). Dkt. No. 11 ("Motion"). **The Court finds this matter appropriate for resolution without oral argument and vacates the November 5, 2026 hearing.** ***See*** **Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.** For the reasons stated herein, the Court hereby GRANTS the Motion.

# I. Background

## A. Factual Background[1]

On or about January 6, 2005, Plaintiff Adriana Delgado Camacho attempted to enter the United States illegally using documents belonging to Karen Medina Saldana. Compl. ¶ 13. Saldana was not a United States citizen. *Id.* Delgado was apprehended at the border, fingerprinted, and given an expedited removal order. *Id.* Upon being apprehended, Delgado admitted that she was a citizen of Mexico. *Id.* ¶ 16. This incident was noted on Delgado's "rap sheet." *Id.* ¶ 13.

On the rap sheet, it does not reference that Delgado made any false claim to United States citizenship. *Id.* There is only reference to a five-year bar on return to the United States. *Id.*

Shortly after being apprehended and removed, Delgado returned illegally to the United States. *Id.* ¶ 14. She married Plaintiff Felipe Torres Andrade shortly after returning. *Id.* Andrade prepared an I-130 visa petition on behalf of Delgado, which was approved. *Id.*

In 2008, Delgado had an interview with the United States consulate. *Id.* Following the interview, Delgado's application for immigrant visa was denied because she returned to the United States before the five-year bar on her return had expired. *Id.* Delgado and Andrade were not aware and had never been told that the January 6, 2005, incident would impact Delgado's ability to obtain an immigrant visa. *Id.* Delgado was told after that first interview that she had to wait for at least ten years, in Mexico, before she could request a new interview at the consulate in Ciudad Juarez. *Id.*

After waiting ten years, Delgado requested and received a second interview. *Id.* ¶ 15. At the second interview, Delgado was asked to file an I-212 waiver application, which was subsequently approved. *Id.* Delgado then requested a third interview. *Id.* ¶ 16.

---

[1] The facts described here are derived from Plaintiffs' Complaint ("Compl."). Dkt. No. 1. For the purposes of the Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

At the third interview, for the first time, Delgado was advised (after two previous interviews) that she was being held permanently inadmissible allegedly for having made a false claim to United States citizenship back in 2005. *Id.*

After that third interview and refusal of her visa application at Ciudad Juarez, Delgado attempted provide more information regarding her case through the United States consulate. *Id.* ¶ 17. Delgado filed for reconsideration of the decision denying her immigrant visa, citing new evidence that she never used citizenship documents to try to enter the United States. *Id.* The DOS responded to Delgado's Request for Reconsideration with a one-page letter dated August 28, 2024, denying the request. *Id.*

**B. Procedural History**

On December 29, 2025, Plaintiffs filed a Complaint in this Court. Compl. Plaintiffs brought claims of violations of the First Amendment, Administrative Procedure Act, Declaratory Judgement Act, and regulatory due process (*Accardi* Doctrine). Compl. ¶¶21-28.

On June 22, 2026, Defendants filed the instant Motion. Motion. Pursuant to the Court's Civil Standing Order, Oppositions "[m]ust be filed no later than fourteen (14) days after the filing of the initial Motion." Civil Standing Order § VIII(B). To date, Plaintiff has not filed an Opposition to the Motion.

**II. <u>Applicable Law</u>**

**A. Federal Rule of Civil Procedure 12(b)(1)**

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a

facial challenge, the moving party "asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Id*.

**B. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**C. The Administrative Procedure Act**

5 U.S.C. § 702 provides: "A person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Therefore, a petitioner may seek review of USCIS's decision on a Form I-130 petition in the United States District Court pursuant to the APA. *See* 5 U.S.C. §§ 701 et seq. The APA allows a court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id*. § 706(2)(A). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 52 (1983)). "[T]he agency must examine the relevant data and articulate

a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). An agency need only address significant comments—that is, comments which raise relevant points and, if incorporated, would require a change in the agency's outcome. *Altera*, 926 F.3d at 1081.

This is a "highly deferential" standard under which there is a presumption that the agency's action is valid "if a reasonable basis exists for its decision." *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). The district court cannot "substitute [its] judgment for that of the agency." *Protect Our Communities Found. v. LaCounte*, 939 F.3d 1029, 1043 (9th Cir. 2019). A court will not disturb the agency's findings under this deferential standard unless the evidence presented compels "a reasonable finder of fact to reach a contrary result." *Herrera v. U.S. Citizenship and Immigr. Servs.*, 571 F.3d 881, 885 (9th Cir 2009). An agency decision will be upheld if a court finds "that evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). An agency action is reasonable "when there is such evidence as reasonable minds might accept as adequate to support it, even if it is possible to reach a contrary result on the basis of the evidence." *Oropeza-Wong v. Gonzalez*, 405 F.3d 1135, 1147 (9th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

However, an agency action is arbitrary and capricious when it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency enterprise." *Motor Vehicle Mfr.'s Ass'n*, 463 U.S. at 43. In evaluating whether an agency's decision meets this standard, "[courts] ask whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Res. Def. Council v. U.S. Dep't of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997) (quoting *Pyramid Lake Pauite Tribe of Indians v. U.S. Dep't of the Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990)).

## III. Discussion

Plaintiffs assert that the actions of Defendants violate Andrade's First Amendment right to intimate association and both Plaintiffs' right to due process, as well as cause injury to Plaintiffs due to legal error. *See generally* Compl. Plaintiffs also contend that the Court has jurisdiction over the case under the Declaratory Judgement Act. Compl. ¶ 26.

Defendants argue that the Court lacks jurisdiction to review the Defendants' decisions and fails to sufficiently plead constitutional claims. *See generally* Motion. Plaintiffs' Complaint asserts that the Court has jurisdiction to review the Defendants' decisions, and that Plaintiffs adequately allege constitutional violations. For the reasons discussed below, the Court finds that Delgado fails to state a claim based on the doctrine of consular nonreviewability. Further, the Court determines that Andrade lacks a constitutional due process right to Delgado's application for an immigrant visa. Accordingly, the Court GRANTS the Motion.

### A. The doctrine of consular nonreviewability bars judicial review of Delgado's immigrant visa decision (Claim 2).

Defendants assert that the doctrine of consular nonreviewability and Delgado's status as a non-citizen prevent her from having any right to judicial review of her immigrant visa application decision. *See* Motion 6-7. Plaintiffs did not file an Opposition to this argument. For the reasons discussed below, the Court finds that Delgado is not entitled to judicial review of her immigrant visa application decision.

Non-citizens within the U.S. have "no constitutional right to entry to this country as a nonimmigrant or otherwise." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). Because the plaintiff in *Mandel* had no constitutional right to entry into the U.S., he also lacked entitlement to judicial review. *Id.* There is only one avenue by which the Court can review a visa issuance decision: when there is "constitutional error, where the visa application is denied without a 'facially legitimate and bona fide reason.'" *Allen v. Milas*, 896 F.3d 1094, 1097 (9th Cir. 2018) (quoting *Mandel*, 408 U.S. at 770). For a decision to be "facially legitimate and bona fide," the consular officer must (1) "deny the visa under a valid statue of inadmissibility" and (2) "'provide at least a facial connection to' the

statutory grounds for inadmissibility." *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016) (quoting *Kerry v. Din*, 576 U.S. 86, 105 (2015)). In order for the Court to be able to look behind the decision of the consulate, *both* of these conditions must apply to the visa denial. Thus, if a U.S. citizen's constitutional rights are violated *and* there is no "facially legitimate and bona fide reason" for that violation, then the Court can review the consular officer's decision.

The plaintiff in *Allen* brought claims of legal error under the Administrative Procedure Act against the U.S. Consulate in Frankfurt, Germany, for denying his wife's application for an immigrant visa. *Id.* at 1097-98. Plaintiffs in that case claimed that "the consular officer committed legal error when he identified Mrs. Allen's 1998 theft conviction as a 'crime involving moral turpitude' because the German theft statue does not categorically require an intent to deprive a person of property permanently – which he alleges is an element of the generic offense under federal law in the United States." *Id.* at 1098. *See also Castillo-Cruz v. Holder,* 581 F.3d 1154. 1159-61 (9th Cir. 2009). The Ninth Circuit established that "the APA provides no avenue for judicial review." *Id.* at 1097. Because the Consulate is given full discretion of visa issuance decisions by the Executive, the consular officer's decision is not subject to judicial review because "the APA provides that its judicial review provisions do not apply where 'agency action is committed to agency discretion by law." *Id.* at 1104 (quoting 5 U.S.C. § 701(a)(2)). The Ninth Circuit also reemphasized the *Mandel* decision that "Congress entrusts discretionary visa-processing and ineligibility-waiver authority in a consular officer or the Attorney General" and "the courts cannot substitute their judgements for those of the executive." *Id.* at 1105. Thus, the decisions of the U.S. Consulate in Frankfurt, Germany, fell outside the scope of the APA due to doctrine of consular nonreviewability. *Id.* at 1109.

Defendants in *Allen* attempted to dismiss on a lack of subject-matter jurisdiction based on the doctrine of consular nonreviewability, but the Ninth Circuit found that neither the APA nor the doctrine of consular nonreviewability contained anything that would "divest the district court of subject matter jurisdiction" *Id.* at 1099. Instead, the case was ultimately dismissed for "failure to state a claim upon which relief can be granted" after determining that the plaintiff's wife's

immigrant visa application was denied "based on 'facially legitimate and bona fide reasons.'" *Id.* at 1098 (quoting *Mandel*, 408 U.S. at 770).

The Complaint asserts that Delgado's immigrant visa application denial violates the APA as the Plaintiffs are "suffering a legal wrong because of agency action." *See* Complaint ¶ 24. The APA, as held in *Allen*, does not allow for judicial review of visa issuance, even in cases of legal error, because the decision is within the full discretion of the consular officer. 896 F.3d at 1097-99. Further, Delgado was provided with a "facially legitimate and bona fide reason" for her visa denial, as she was given a statue of inadmissibility, namely 8 U.S.C. § 1182(a)(6)(C)(ii), and a "facial connection to" the statute because of her attempt to illegally enter the U.S. in 2005. *See* Compl. ¶13. Thus, even if Delgado's "rap sheet" never showed a charge of misrepresentation as a U.S. citizen, Dkt. No. 1-2 at 27-29, and she made a timely retraction of any misrepresentation statements, the doctrine of consular nonreviewability still bars judicial review, as the consular officer who denied her immigrant visa application in the U.S. Consulate in Ciudad Juarez, Mexico, provided her with a "facially legitimate and bona fide reason" for her application denial. *Allen*, 896 F.3d at 1097-99. Because Delgado was provided with "facially legitimate and bona fide reason" for denial of her immigrant visa application denial, the Court finds that Plaintiffs have not stated a claim upon which relief can be granted.

Defendants also move for dismissal for lack of subject-matter jurisdiction under the APA. *See* Motion at 5-6. However, the doctrine of consular nonreviewability does not remove the power of the Court to hear this case, only "the *scope* of [] review over a case." *Id.* at 1099. Thus, the Court retains jurisdiction to hear the case, but the failure to state a claim still results in its dismissal.

### B. Felipe Andrade does not have a constitutional due process right in the outcome of Adriana Delgado's application for an immigrant visa. (Claim 1)

In the Complaint, Plaintiffs contend Andrade has the right to intimate association under the First Amendment and is therefore entitled to a "facially legitimate and bona fide reason" for the Defendants' denial of Delgado's immigrant visa application under the doctrine of consular nonreviewability. See Compl. ¶ 22. Defendants assert that Andrade has no right to challenge the decision of Delgado's immigrant visa application because the First Amendment does not create an

exception to the doctrine of consular nonreviewability. *See* Motion at 7-11. Plaintiffs did not file any Opposition to this argument. For the reasons discussed below, the Court finds that Andrade has no constitutional right to due process in the matter of Delgado's immigrant visa application.

Previously in *Department of State v. Muñoz*, the Supreme Court established that for an alleged constitutional violation to be an exception to the doctrine of consular nonreviewability, the asserted right must be "deeply rooted in this Nation's history and tradition." *Dep't of State v. Muñoz*, 602 U.S. 899, 903 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720). There, plaintiff claimed that her husband's immigrant visa application denial was a violation of her right to "liberty" under the Fifth Amendment, thus invoking her right to due process. *Id.* at 901. However, the Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id* at 909. The Supreme Court further commented that "[plaintiff] has suffered harm from the denial of [her husband's] visa application, but that harm does not give her a constitutional right to participate in his consular proceeding. *Id.* at 917; *see Kerry v. Din*, 576 U.S. 86, 101 (2015) ("There is a 'simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally.'" (quoting *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 788 (1980)).

The doctrine of consular nonreviewability bars judicial review except in the case where a U.S. citizen's constitutional right is violated by the consular officer's decision, which Plaintiffs contend through their First Amendment claim. Compl. ¶ 22 The First Amendment right to intimate association is protected by the Fifth Amendment under the Due Process clause. However, as held in *Muñoz*, the right to have a non-citizen admitted into the country is not a recognized fundamental liberty under the Fifth Amendment. 602 U.S. at 909. Thus, Delgado's immigrant visa application denial did not violate any of Andrade's constitutional rights as a citizen of the U.S. As such, the constitutional violation exception to the doctrine of consular nonreviewability is not applicable to Plaintiffs' case, and the Court cannot look behind the decision of the consular officer.

/ / /

/ / /

**C. There is no valid claim under the Declaratory Judgment Act. (Claim 3)**

The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy within its jurisdiction [except specified federal tax actions and bankruptcy proceedings]." *See* 28 U.S.C. § 2201(a).

In order to seek a declaratory judgment, a plaintiff "need only demonstrate an independent basis of federal jurisdiction and an actual case or controversy." *Calderon v. Ashmus*, 523 U.S. 740, 744 (1998). The Supreme Court has summarized the requirements a plaintiff must meet to obtain a declaratory judgment as: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The Court finds that because the Plaintiffs' other claims fail, the claim under the Declaratory Judgement Act does as well. The Declaratory Judgment Act is not an independent cause of action, but instead is predicated on other viable claims made. Because Plaintiffs have no other viable claims in the case, their request for declaratory relief cannot be granted by the Court.

**D. Plaintiffs do not state an agency rule or regulation that Defendants violated, and thus have no claim under the *Accardi* doctrine.**

The *Accardi* doctrine provides that an agency's decision cannot stand if it fails to follow its own regulations. *U.S. ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954) (reversing a Board of Immigration Appeals decision for failure comply with regulations setting forth the manner in which discretion shall be exercised); *Service v. Dulles*, 354 U.S. 363, 388-89 (1957) (finding that a petitioner's dismissal cannot stand in light of an agency's failure to comply with regulatory requirements).

Plaintiffs argue that the Defendants motion for reconsideration decision "did not articulate or explain why the new evidence cited did not change the original decision in 2022", thereby violating regulatory due process. Compl. ¶ 28. Defendants respond that Plaintiffs do not "identify an agency rule or procedure that the government allegedly violated." Motion at 11-12. Defendants' contentions

are availing. While Plaintiffs cite to the *Accardi* doctrine, the Complaint does not set forth the regulations allegedly violated. Plaintiffs' allegations detail a disagreement with the USCIS's decision to affirm Delgado's visa denial on the basis that she presented an inauthentic United States birth certificate and failed to timely retract the material misrepresentation when entering the United States. *Id.*; *see* Dkt. No. 1-1 at 31, 38-39. Without allegations discussing the regulations violated, Plaintiffs cannot establish an *Accardi* claim.

**E. Leave to amend is not warranted.**

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A district court may deny leave to amend due to futility of amendment. *Id*. at 1034.

The Court finds that the deficiencies in Plaintiffs' Complaint cannot be cured. Based on the record, Plaintiffs cannot plausibly plead that Defendants did not provide a legitimate reason for denying Delgado's visa and thus, cannot plead around consular non-reviewability. Further, Plaintiffs cannot plausibly plead that Andrade has a constitutional right to Delgado's visa application outcome. Therefore, any amendment would be futile.

**IV. <u>Conclusion</u>**

For the foregoing reasons, the Court hereby GRANTS the Motion (Dkt. No. 35) and ORDERS as follows:

1. This action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.



Dated: October 5, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge